IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHERYL YOUNG, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:19-cv-00192 |
| BFI WASTE SERVICES OF TEXAS, LP | § | |
| d/b/a ALLIED WASTE SERVICES OF | § | |
| AMARILLO & REPUBLIC SERVICES | § | |
| OF AMARILLO, | § | |
| | § | JURY DEMANDED |
| *Defendant*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Cheryl Young, a female roll-off driver, brings this Equal Pay Act against her former employer Defendant BFI Waste Services of Texas, LP, doing business as Allied Waste Services of Amarillo and Republic Services of Amarillo, for the violation of paying her less than male drivers who performed similar work under similar working conditions.

Plaintiff intends to amend this lawsuit in the future, after going through the EEOC's administrative charge-filing process, to add Title VII claims for pay discrimination and wrongful termination.

On her Equal Pay Act claim, Plaintiff states the following:

**PARTIES**

1. Plaintiff, Cheryl Young is a female resident of Amarillo, Texas.

2. Defendant BFI Waste Services of Texas, LP is a foreign limited partnership with a principal place of business in Arizona.

3. Defendant operates a trash pick-up and disposal business throughout the State of Texas.

4. Defendant does business in Amarillo, Texas as Allied Waste Services of Amarillo and Republic Services of Amarillo, and does business in other parts of Texas under other similar assumed names.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's Equal Pay Act Claim, brought under 29 U.S.C. §§ 206(d) and 216(b), pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claim occurred in this district in Amarillo, Texas.

## EQUAL PAY ACT COVERAGE

7. Defendant is an employer covered by the Equal Pay Act.

8. Defendant engaged in commerce as that term is defined in 29 U.S.C. §630(b), 29 U.S.C. §203(d) and 42 U.S.C. §2000e(b).

9. Defendant is a large trash collection and disposal company with gross annual revenues in excess of $500,000 per year.

10. Defendant also, at all relevant times, had employees engaged in commerce.

11. Defendant's employees drove vehicles manufactured and purchased from other states.

12. Defendant's employees drove vehicles on interstate highways in order to perform their jobs.

13. Defendant's employees regularly utilized interstate telecommunications networks in the course of performing their job duties.

14. Defendant's employees regularly utilized gas, radios and/or cellular phones, personal protective equipment such as hard hats, hi-visibility jackets, and boots manufactured and purchased from other states.

## FACTS SUPPORTING PLAINTIFF'S EQUAL PAY ACT CLAIMS

15. Defendant employed Plaintiff Cheryl Young as a "roll-off" driver from approximately May 10, 2016 through May 9, 2019.

16. Defendant set Cheryl Young's base hourly pay rate at $16.00 per hour.

17. Defendant paid Cheryl Young base pay at a base hourly pay rate of $16.00 per hour throughout her employment with Defendant.

18. As a result, Defendant paid Cheryl Young an overtime rate of $24.00 per hour throughout her employment.

19. Cheryl Young is female.

20. Defendant set the base hourly pay rates of male roll-off drivers at rates much higher than Plaintiff's pay rate.

21. Defendant paid Travis Morales, a male roll-off driver, base pay at a base hourly pay rate of $18.75 per hour.

22. As a result, Defendant paid Travis Morales an overtime rate of $28.125 per hour.

23. Defendant paid Gregory Scott, a male roll-off driver, base pay at a base hourly pay rate of $19.75 per hour.

24. As a result, Defendant paid Gregory Scott an overtime rate of $29.625 per hour.

25. Defendant paid Jeremiah Jaso, a male roll-off driver, base pay at a base hourly pay rate

of $25.00 per hour.

26. As a result, Defendant paid Jeremiah Jaso an overtime rate of $37.50 per hour.

27. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso performed similar work which required equal skill, effort, and responsibility.

28. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso performed their work under similar working conditions.

29. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso all worked out of the Amarillo, Texas terminal.

30. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso all worked under the supervision of the same Terminal Manager.

31. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso all worked under the supervision same Terminal supervisors.

32. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso were all responsible for reporting to work at the Amarillo Terminal at approximately the same time in the morning.

33. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso received their route assignments from the same dispatch team.

34. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso, were all responsible for following the same workplace rules.

35. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso, were all responsible for following the same safety protocols.

36. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso, were all required to don personal protective equipment, including high-visibility clothing, hard hats, and boots, in the course of performing their job duties.

37. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso, were all required to drive waste disposal trucks of similar sizes and weights.

38. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso were all required to pick up waste disposal containers on their assigned routes.

39. Plaintiff Cheryl Young, Travis Morales, Gregory Scott, and Jeremiah Jaso were all required to "roll off" or dump the waste disposal containers they picked up on their assigned routes at the same landfill in Canyon, Texas.

40. Despite performing similar work (i.e. the job of "roll off driver") under similar working conditions, Defendants paid Plaintiff Chery Young (a female) less than her male counterparts.

41. From 2016 through 2019, Defendant did not use a seniority system to set the base pay or overtime rates of the roll off drivers at its Amarillo, Texas terminal.

42. Even if Defendant had used a seniority system to set pay, Plaintiff Cheryl Young had the same seniority or more seniority than Travis Morales, Gregory Scott, and Jeremiah Jaso.

43. Cheryl Young and Jeremiah Jaso both started working for Defendant at approximately the same time and both had three years with the company.

44. Travis Morales and Gregory Scott started working for Defendant after Cheryl Young and had less than three years with the company

45. From 2016 through 2019, Defendant did not pay the roll off drivers at its Amarillo, Texas termination under a system which measures earnings by quantity or quality of production.

46. Instead, between 2016 and 2019, Defendant paid the roll off drivers at its Amarillo, Texas terminal by multiplying the number of regular hours (i.e. the first 40 hours) the driver worked by the driver's base pay rate and multiplying the number of overtime hours (i.e. hours over 40 hours) the driver worked by the driver's overtime rate.

47. From 2016 through 2019, Defendant did not use a merit system to set the base pay or overtime rates of the roll off drivers at its Amarillo, Texas terminal.

48. There was no pre-set amount by which a roll off driver's pay rate would go up or down based on annual or other performance ratings.

49. There was no legitimate business reason for Defendant to pay Cheryl Younger a lower base pay rate or lower overtime rate than Travis Morales.

50. There was no legitimate business reason for Defendant to pay Cheryl Young a lower base pay rate or lower overtime rate than Gregory Scott.

51. There was no legitimate business reason for Defendant to pay Cheryl Younger a lower base pay rate or lower overtime rate than Jeremiah Jaso.

52. On information and belief, there were many other male roll-off drivers employed by Defendant at the Amarillo, Texas terminal before, during, and after Cheryl Young's dates of employment who were paid higher hourly pay rates than Cheryl Young under the same hourly pay system for performing similar work under similar working conditions without any legitimate business justification.

53. Plaintiff Cheryl Young also received less pay than her male counterparts because Defendant instructed Plaintiff that she could not clock in to work until after she had changed into her personal protective equipment.

54. Defendant, however, allowed male roll-off drivers at the Amarillo, Texas terminal, including but not limited to Travis Morales, Gregory Scott, and Jeremiah Jaso, to clock in to work first before changing into their personal protective equipment.

55. Plaintiff Cheryl Young's sex (female) was a factor in Defendant failing to pay her for the time she spent changing into her personal protective equipment while paying similarly-situated male roll-off drivers for the time they spent changing into their personal protective equipment.

56. On occasion, Defendant had roll-off drivers at the Amarillo, Texas Terminal assist with work at the Lubbock, Texas terminal.

57. Defendant paid Plaintiff Cheryl Young differently than male roll-off drivers for the work performed at the Lubbock, Texas terminal.

58. Specifically, Defendant paid an Amarillo, Texas based male roll-off driver Jeff Rickets a $125 per day bonus and a $50 per diem for days he spent helping out at the Lubbock terminal, but did not pay Plaintiff Cheryl Young any bonus or per diem pay for days she spent helping out at the Lubbock terminal.

59. As Plaintiff Cheryl Young will set forth in a separate EEOC Charge of Discrimination, Defendant treated her differently from male roll-off drivers throughout her employment, including

    (a) failing to protected her from retaliation after she reported sexual harassment;

    (b) failing to provide her a female-only changing room;

    (c) assigning her the worst truck on the fleet;

    (d) assigning her heavier loads than male roll-off drivers;

    (e) denying her application for an oil field driver position she had every qualification to perform,

(f) denying her training opportunities readily given to newly hired male drivers; and

(g) firing her for retaliatory and sexist reasons just when she had finally obtained an internal job offer out of the Portland, Oregon terminal that would have substantially increased her hourly pay rate.

## CAUSES OF ACTION

### I. VIOLATION OF THE EQUAL PAY ACT OF 1963
*(29 U.S.C. § 206(d); 29 U.S.C. § 216(b))*

60. Plaintiff reincorporates by reference Paragraphs 6-59.

61. In her capacity as a "roll off driver," Plaintiff's job required equal skill, effort and responsibility, and was performed under similar working conditions, as male employees employed by Defendant as "roll off drivers."

62. Defendant paid Plaintiff unequal base pay and unequal overtime compensation in comparison to male "roll off drivers," including but not limited to Travis Morales, Gregory Scott, and Jeremiah Jaso.

63. Defendant also paid Plaintiff unequal compensation in comparison to male "roll off drivers," including but not limited to Travis Morales, Gregory Scott, and Jeremiah Jaso, by denying Plaintiff the same pay Defendant paid to male "roll off drivers" for time spent changing into personal protective equipment.

64. Defendant also paid Plaintiff unequal compensation in comparison to male "roll off drivers" for time spent helping out at the Lubbock Terminal, including failing to pay Plaintiff the same bonus and per diem pay Defendant paid to male "roll-offer" drivers like Jeff Rickets for time spent helping out at the Lubbock terminal.

65. Plaintiff Cheryl Young's sex (female) was a factor in the differential between her pay and the pay of male roll-off drivers who performed similar work under similar working conditions.

66. Defendant's actions in paying Plaintiff unequal compensation in comparison to her male counterparts violated 29 U.S.C. § 206(d)(1) and 29 U.S.C. § 215(a)(2).

67. Defendant's actions in paying Plaintiff unequal compensation based on her sex were willful and not in good faith, thereby entitling her to liquidated damages pursuant to 29 U.S.C. §216(b).

68. Defendant and/or its parent or sister companies have been previously sued for violating the Fair Labor Standards Act and were thus well aware the Federal laws governing their driver compensation decisions and well aware of the consequences of failing to pay their drivers in accordance with Federal law.

69. Defendant's willfulness and lack of good faith is also demonstrated by evidence showing that Defendant intentionally and consistently disregarded Plaintiff's rights to equal treatment, including evidence that Defendant failed to protected her from retaliation after she reported sexual harassment, failed to provide her a female-only changing room, assigned her the worst truck on the fleet, assigned her heavier loads than male roll-off drivers, denied her application for an oil field driver position she had every qualification to perform, denied her training opportunities readily given to newly hired male drivers, and fired her for retaliatory and sexist reasons just when she had finally obtained an internal job offer out of the Portland, Oregon terminal that would have substantially increased her hourly pay rate.

70. As a result of Defendant's violations of the Equal Pay Act, Plaintiff seeks to recover actual damages in the form of all of the wages she lost as a result of being paid less than male roll-off drivers for work, including lost base pay, lost overtime pay, lost bonuses, and lost per diems, and all liquidated damages, court costs, post-judgment interest, and reasonable attorneys' fees she is entitled to recover under the law.

## JURY DEMAND

71. Plaintiff Cheryl Young requests trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For an Order finding Defendant liable to Plaintiff for her lost wages, lost bonuses, lost per diems, and other lost compensation, and for liquidated damages in an amount equal to her actual damages;

B. For an Order finding Defendant's actions willful, and, thus, extending the amount of lost wages and liquidated damages Plaintiff can recover from two years to three years;

C. For an Order awarding Plaintiff the costs of this action;

D. For an Order awarding Plaintiff reasonable attorneys' fees;

E. For an Order awarding Plaintiff post-judgment interest at the highest rate allowed by law; and

F. For an Order granting such other and further relief as may be necessary and appropriate.


DATED: October 7, 2019            Respectfully submitted,

                                          **TREMAIN ARTAZA PLLC**

                                          */s/ Christine A. Hopkins*
                                          **Christine A. Hopkins**
                                          Texas State Bar No. 24095768
                                          **Carmen Artaza**
                                          Texas State Bar No. 24055114
                                          13140 Coit Road, #104
                                          Dallas, TX 75240
                                          christine@tremainartaza.com
                                          carmen@tremainartaza.com
                                          Telephone:  469-573-0297
                                          Facsimile:   214-254-4941

                                          **ATTORNEYS FOR PLAINTIFF**